IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

**FILED**

99 JUN 30 PM 3: 07

U.S. DISTRICT COURT
N.D. OF ALABAMA

REGINALD OWENS, )
                )
    Plaintiff, )
                )
v.              )        CV-98-AR-0474-E
                )
GENERAL MOTORS  )
CORPORATION,    )
                )
    Defendant.  )

**ENTERED**

JUN 3 0 1999

### MEMORANDUM OPINION

Presently before the court is a motion for summary judgment by defendant, General Motors Corporation ("GM").  Plaintiff, Reginald Owens ("Owens"), brought the instant action against GM in February, 1998, alleging that GM, which was his employer at the time, had discriminated against him on the basis of race, in violation of 42 U.S.C. § 1981 ("§ 1981") and 42 U.S.C. § 2000e *et seq.* ("Title VII").  After multiple extensions to the briefing schedule were granted to both parties, the court took the motion under submission as of February 6, 1999.  Due to the sheer number of alleged events, incidents, attitudes, remarks, and actions about which Owens complains, the court has taken a great deal of time to consider the viability of his case.  After sorting through his many allegations, the court concludes that <u>none</u> of Owens claims are supported by evidence which could lead a reasonable jury to find illegal race discrimination.  This



conclusion remains even if Owens' allegations are considered
collectively.  Their collective weight fails to establish a
viable claim, as a matter of law, for violations of either § 1981
or Title VII.  Accordingly, the court determines that GM is
entitled to judgment as matter of law and will grant its Rule 56
motion.

A full-fledged opinion is unnecessary, because the court
finds itself in agreement with the legal arguments and binding
authority presented in GM's well-researched and persuasive
briefs.  In short, the court agrees with GM's conclusion that:

> The "harassment" and "retaliation" referred to by Plaintiff
> consisted of instructions to work when on duty, to do his share of
> the work, and to do his work properly.  Simply put, Plaintiff's
> allegations of unequal treatment, even if true, do not suggest
> acts severe or pervasive enough to rise to an actionable level or
> hostile environment race discrimination or retaliation.

*Def.'s memo. in support of mot. for summary judgment*, at 2.
Nevertheless, the court will highlight the important points
leading to its conclusion.

Owens complains that management often instructed him to stay
at or return to his post, where he operated a wire-cutting
machine, and that he was generally "hounded" to be more
productive.  By contrast, Owens contends that management did not
so instruct white employees.  However, it is undisputed that
Owens' productivity level was lower than other employees,
suggesting that he required more supervision and instruction.
*Upton depo.*, pp 42-54.  Furthermore, it is also undisputed that

white employees were sometimes similarly told to get back to work, on occasions when they were idle or not working hard enough. *Upton Aff., par. 6, Warhol Aff., para. 4.*

Owens also complains that he was disciplined for mislabeling a large quantity of wire, a costly mistake. Again, he contends that white employees were not so disciplined. However, although it does appear from the record that mislabeling mistakes were not always disciplined, GM presents evidence that certain management officials were coincidentally present at the time of the mistake in question, and that their presence occasioned the reprimand. In any case, there is undisputed evidence that white employees were treated similarly for other mislabeling incidents. *Woods depo.,* at 50.

Furthermore, it is undisputed that Owens never received any written warnings about low productivity, mislabeling of wire, or not remaining at his post, despite his contention that he was verbally instructed in these respects. Owens was not suspended or terminated on any of these grounds. Although Owens was ultimately terminated, purportedly for reasons relating to absenteeism, Owens does not allege that his ultimate termination was racially motivated. *Pl.'s depo.,* at 213. His termination is therefore not at issue in this action. There appears in the record no tangible adverse employment actions upon which to ground either a harassment or a retaliation claim.

As regards Owens' contention that his work environment was racially hostile, his claim fails because the conduct and actions upon which he relies for support are nothing more than the legitimate, business-motivated, non-racial management actions described above.  If Owens interpreted the multiple instances of verbal instruction and "hounding" as racially-motivated, then it was forseeable that over time he would conclude that his work environment was permeated with racial hostility.  Because the evidence demonstrates that those management actions were legitimate, however, his hostile environment and retaliation claims are groundless.

Owens admits that his work environment never subjected him to racially derogatory comments or jokes.  *Pl's. depo.*, at 188, 192.  Owens does contend that another employee once told him of racist comments made by unnamed co-employees.  However, Owens cannot point to any individuals who used alleged racist language, and even if he could, a single racist comment, not directed at Owens and made outside his presence, would not suffice to convert his otherwise tolerable environment into an actionably hostile one.

One incident reported by Owens does conjure up the specter of racist intimidation.  Owens recounts that Gary Szanny, a GM supervisor without any direct authority over Owens, had tied a length of rope into a noose and placed it above his own desk.

There is no evidence directly demonstrating that the noose held racist meaning, but the court understands that an inference of racism would not be unreasonable.  Szanny urged that no racism was intended, but that the noose was meant as a joking threat to all employees, black and white.  It is clear from the evidence that the noose was present in Szanny's office for some period of time before Owens visited there, that Szanny had no reason to believe that Owens would visit there, and that by the time Owens first saw the noose, complaints against Szanny had already been lodged through the local union by other employees.  GM responded quickly and effectively.  The noose was removed.  Szanny was demoted, denied a pay increase for a year, forbidden to supervise other employees for two years, issued a disciplinary warning, and placed on probation for a year.  GM's disapproval of even the appearance of racism in its workplace could not have been clearer.  As a result, even if the noose incident would otherwise make out a *prima facie* case of discrimination, the affirmative defenses available to GM under *Faragher v. City of Boca Raton*, 118 S.Ct. 2275 (1998), clearly entitles GM to judgment in its favor as a matter of law.

In sum, Owens presents no actions by GM or its management personnel which, as a matter of law, could be construed as racially discriminatory or retaliatory.  Furthermore, Owens' work environment was characterized by a clear policy against

discrimination and could not possibly be considered racially hostile by a reasonable jury.  GM is entitled to summary judgment in its favor regarding all of Owens' claims.  A separate and appropriate order will be entered.

DONE this __30__ day of June, 1999.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE